ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Central Texas Express Metalwork LLC ) ASBCA No. 61109
  d/b/a Express Contracting )
)
Under Contract No. FA3047-11-C-0023 )

APPEARANCES FOR THE APPELLANT:     Johnathan M. Bailey, Esq.
                                   Kristin E. Zachman, Esq.
                                     Bailey & Bailey, P.C.
                                     San Antonio, TX

APPEARANCES FOR THE GOVERNMENT:    Jeffrey P. Hildebrant, Esq.
                                     Air Force Deputy Chief Trial Attorney
                                   Lt Col Nathaniel H. Sears, USAF
                                   Phillip E. Reiman, Esq.
                                     Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE SWEET ON THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This is an appeal of a contracting officer's (CO's) final decision rejecting the claim of appellant Central Texas Express Metalwork LLC d/b/a Express Contracting (CTEM), asserting that it and its subcontractor were entitled to equitable adjustments. The government has moved for summary judgment, arguing that a settlement agreement releases the claims. We grant the government's motion, and deny the appeal.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 18 August 2011, the United States Air Force awarded CTEM Contract No. FA3047-11-C-0023 (0023 contract) (R4, tab 1). Under the 0023 contract, CTEM was to repair and replace heating, ventilation, and air conditioning (HVAC) systems in building 7359 and replace two chillers in building 7359 at Lackland Air Force Base in exchange for $2,457,237 (*id.* at 3). The 0023 contract provided that "Final Payment for each delivery order will be made only after receipt of...release of claims" (*id.* at 8).[1]

---

[1] Despite the mention of a delivery order, the contract does not call for the use of delivery orders (R4, tab 1).

2. CTEM entered into a subcontract with International Mechanical Services, Inc. (IMS) for materials, labor, and equipment (app. resp., ex. 1, ¶ 2).

3. In 2013, IMS sued CTEM in the United States District Court for the Western District of Texas (app. resp., ex. 1A at 2). IMS and CTEM entered into a settlement agreement resolving that case (*id.*) and CTEM agreed to sponsor IMS's claim against the government (*id.* at 3).

4. In November 2013, Ryan Bueno—the CO—and Kara Clayton—CTEM's president—agreed to reduce the scope of the 0023 contract by not requiring CTEM to install equipment at building 7359. As a result, the parties agreed to a $286,645.41 credit to the Air Force for the reduced scope. The parties also agreed to a $62,421.68 equitable adjustment for CTEM for delays and additional work. Finally, Ms. Clayton indicated that CTEM intended to file an additional delay claim. (R4, tab 37 at 5-7, tab 66 at 2)

5. On 10 September 2014, CTEM submitted a request for equitable adjustment (REA) for $643,841.88 in increased costs as a result of the Air Force's purported delays and changes (R4, tab 16 at 1-2). The REA stated that it "includes various subcontractor requests for equitable adjustments caused by the same delays and changes" (*id.* at 2). In particular, the REA indicated that it sought $345,691.07 on behalf of IMS (*id.* at 13-17).

6. On 25 May 2016, the Air Force and CTEM met to negotiate the REA, which included the sponsored claim of IMS (R4, tab 37 at 4-6). At the time, there was an outstanding contract balance of $395,727.99 (*id.* at 4). That outstanding balance did not include the agreed-upon $286,645.41 credit to the Air Force, the agreed-upon $62,421.68 equitable adjustment or any amount for the pending REA (*id.* at 5-7). "The final agreed amount to settle the [pending] REA [was] $395,727.99, that is approximately 56% of the amount of the REA when including the contract increase agreed to by Mr. Bueno in November 2013" (*id.* at 7). Thus, the Air Force essentially agreed to forego its credit ($286,727.99), and CTEM agreed to forego its equitable adjustment ($62,421.68) and pending REA ($643,841.88). Instead, the Air Force simply would make a final payment of $395,727.99—the outstanding contract balance. (*Id.* at 5-7) Settling for the outstanding contract balance would allow for quicker payment. CTEM and IMS further agreed that CTEM would provide a final invoice and release of claims (release). There is no evidence that CTEM intended to except the sponsored claim from the settlement and release, or that the Air Force knew of any such intent. (*Id.* at 7)

7. On 2 June 2016, Ms. Clayton signed the release on behalf of CTEM (R4, tab 39 at 1). The release stated that:

2

> Pursuant to the terms of Contract FA304711C0023 and in consideration of final payment in the amount of $395,727.99 which is now due to be paid under said contract to (hereinafter called the Contractor) or its assignees, if any, the Contractor, upon payment of the sum by the United States of America (Herein after called Government), does remise, release, and discharge the Government, its officers, agents, and employees, of and from all liabilities, obligations, claims, and demands, whatsoever, under or arising from the said contract.

(*Id.*) There is nothing in the release excepting the sponsored claim.

8. That same day, CTEM submitted its final invoice (R4, tab 38 at 1).

9. CTEM then contacted Edgar Kleck—IMS's president—to inform him about the amount IMS would receive for its sponsored claim as part of the settlement (app. resp., ex. 1, ¶¶ 5-6). Mr. Kleck responded that IMS refused to accept the offer (*id.*).

10. Pursuant to the release, the Defense Finance and Accounting Service (DFAS) sent an electronic fund transfer (EFT) in the amount of $395,727.99 to CTEM's bank account on 28 June 2016 (R4, tab 40 at 2). The EFT was returned to DFAS with a notation that CTEM's account was frozen (R4, tab 43 at 1). DFAS emailed Ms. Clayton about the rejected EFT, and inquired how it could make the payment. Ms. Clayton responded, "[p]lease DO NOT attempt to proceed with the payment. This invoice amount is incorrect and we're trying to delete and/or correct this." (*Id.*)

11. CTEM then invoiced the government for "the amount that is not disputed, which is $328,603.99" (R4, tab 42 at 1, tab 44). The government disapproved that invoice because it was not for $395,727.99 under the release (R4, tab 44 at 4).

12. On 11 November 2016, CTEM submitted a certified claim to the CO for $643,841.88 in increased costs as a result of the Air Force's purported delays and changes (R4, tab 48 at 1). In particular, the claim sought $345,691.07 on behalf of IMS (*id.* at 15).

13. The CO denied the claim on the grounds that CTEM released the claims (R4, tab 48 at 3).

14. This timely appeal followed.

DECISION

*I. The Standards for Summary Judgment*

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, if the non-moving party carries the burden of proof at trial for elements of its case and fails to provide such proof, the moving party is entitled to summary judgment. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Liberty Lobby*, 477 U.S. at 255. Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.*

*II. CTEM Agreed to Release its Claims*

CTEM cannot genuinely dispute that it agreed to release its claims. A "final release followed by final payment to a contractor generally bars recovery of the contractor's claims under the contract except for those excepted on the release." *Tri-County Contractors, Inc.*, ASBCA No. 58167, 13 BCA ¶ 35,310 at 173,346 (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1394 (Fed. Cir. 1987)).[2] Here, it is undisputed that CTEM signed a final release. That release broadly stated that, "the Contractor, upon payment of the sum by the United States of America...does remise, release, and discharge the Government, its officers, agents, and employee, of and from all liabilities, obligations, claims, and demands, whatsoever, under or arising from the said contract." (SOF ¶ 7) Moreover, it is undisputed that the government tendered a final payment (SOF ¶ 10).

CTEM argues that the release is not binding because CTEM refused to accept the $395,727.99 payment, so there has not been a final payment (app. resp. at 8-9). Once an offer has been accepted, there is a binding contract. *Anderson v. United States*, 344 F.3d 1343, 1355 (Fed. Cir. 2003); *Noah Lewis*, ASBCA No. 23461, 79-1 BCA ¶ 13,827 at 67,816. Thereafter, neither the offer nor the acceptance generally can be revoked or withdrawn. *Lewis*, 79-1 BCA ¶ 13,827 at 67,816; *Grav v. United States*, 14 Cl. Ct. 390, 393 (1988); *Irvin v. United States*, 1860 WL 4919, at *5 (Ct. Cl., Dec. 18, 1860); 1 CORBIN ON CONTRACTS § 38 at 157-58 (1963). Moreover, once there is a binding contract, that contract imposes upon each party a duty of good faith and fair

---

[2] There are limited exceptions to that rule, such as where there is a mutual mistake, fraud, duress, or continued consideration of a claim. *Bender Shipbuilding and Repair Co.*, ASBCA No. 41459, 91-3 BCA ¶ 24,230, at 121,186. CTEM does not argue that any of those exceptions apply (app. resp.).

dealing in its performance and enforcement. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014).[3] The duty includes a duty not to interfere with the other party's performance. *Id.*

Here, CTEM cannot avoid its obligations under the release by refusing to accept payment. The executed release of claims by CTEM against the Air Force in exchange for the Air Force making a final payment of $395,727.99 created an offer which the Air Force accepted, thereby creating a binding contract that precluded CTEM from withdrawing its offer. (SOF ¶ 6) CTEM effectively seeks to withdraw its offer by refusing to accept payment from the Air Force. That it cannot do because refusing to accept payment would interfere with the Air Force's performance and thereby breach CTEM's duty of good faith and fair dealing. *Metcalf*, 742 F.3d at 990. Because CTEM cannot withdraw its offer at this point, it is bound to accept $395,727.99 for its claims, and release the remainder of the claims.

CTEM also argues that the release is not enforceable because there purportedly was no consideration (app. resp. at 7-8). "[T]here is a distinction between a release given at the time of final payment pursuant to the contract terms and a release given in connection with an ordinary modification." *Universal Painting Corp.*, ASBCA No. 20536, 77-1 BCA ¶ 12,355 at 59,796. When a contract calls for a release at the time of final payment, "the contract itself is the consideration for the release." *Id.* However, when the release is given in connection with a modification, the release must be supported by consideration, and performance of a pre-existing duty is insufficient. *Id.*; *Freedon NY, Inc.*, ASBCA No. 43965, 04-2 BCA ¶ 32,775 at 162,065.

Here, the release was given at the time of final payment pursuant to the contract terms (SOF ¶¶ 6-7). The 0023 contract required a release at the time of final payment (SOF ¶ 1). Moreover, the release expressly stated that it was provided "[p]ursuant to the terms of Contract FA3047[-]11[-]C[-]0023 and in consideration of final payment" (SOF ¶ 7). Because the release was given at the time of final payment pursuant to the contract terms, the contract itself provided the consideration for the release. *Universal Painting*, 77-1 BCA ¶ 12,355 at 59,795-76.

Even if the release had been given in connection with a modification, there would have been consideration. CTEM is correct that the settlement amount equaled the remaining contract balance (SOF ¶ 6). However, CTEM ignores the fact that the parties had agreed to a credit to the Air Force, which was not reflected in that balance (SOF ¶¶ 4, 6). As part of the settlement, the Air Force agreed to forego its credit in exchange for CTEM agreeing to forego its equitable adjustment and REA (SOF ¶ 6). The foregone credit constituted consideration.

---

[3] The duty of good faith and fair dealing applies equally to contractors. *J.C. Manufacturing, Inc.*, ASBCA No. 34399, 87-3 BCA ¶ 20,137 at 101,935.

5

Finally, CTEM argues that the release did not preclude its sponsored claims for IMS in particular because the Air Force was aware at the time of the settlement and release that CTEM was asserting a sponsored claim on behalf of IMS (app. resp. at 10-12 (citing *Matcon Diamond, Inc.*, ASBCA No. 59637, 15-1 BCA ¶ 36,144)). In *Matcon Diamond, Inc.*, we held that "final payment does not bar a claim where the contracting officer knows that the contractor is asserting a right to *additional* compensation, even though a formal claim has not been filed." 15-1 BCA ¶ 36,144 at 176,408 (emphasis added). Here, while the Air Force was aware at the time of the settlement and release that CTEM was asserting a sponsored claim, that sponsored claim was part of the claim that the parties settled (SOF ¶¶ 5-6). There is no evidence that the CO knew that CTEM was asserting a right to compensation in addition to the compensation it received as part of the settlement and release (SOF ¶ 6). On the contrary, the fact that, shortly after the settlement, CTEM informed IMS of the amount that IMS would receive for its sponsored claim under the settlement demonstrates that even CTEM knew that the sponsored claim was part of the settlement, and not an additional claim (SOF ¶ 9). Therefore, the final payment released IMS's sponsored claim in particular.

## CONCLUSION

The government's motion for summary judgment is granted. The appeal is denied.[4]

Dated: 7 September 2017

James R. Sweet
_____
JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[4] Our denial of the appeal under the 0023 contract does not affect any obligation of the Air Force to pay $395,727.99 under the settlement agreement.

6

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61109, Appeal of Central Texas Express Metalwork LLC d/b/a Express Contracting, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7